IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:10-CV-108-FL

| | |
|---|---|
| CARLTON BELLAMY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's 27 & 33). The time for the parties to file any further responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-27) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-33) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for Disability Insurance Benefits ("DIB") on December 19, 2006, alleging that he became unable to work on January 1, 2000. (Tr. 9). This application was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled during the relevant time period in a decision dated

1

August 14, 2009. *Id.* at 9-16. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on June 15, 2010, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-3. Plaintiff filed the instant action on August 13, 2010. (DE-4).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

> *Id.*

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453,

2

1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2000. (Tr. 11). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) history of lumbar surgery; 2) hypertension; and 3) lumbago. *Id.* at 11. However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 12. Based on the medical record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform work at the medium to light exertional levels. *Id.* at 12-15.

The ALJ then proceeded with step four of his analysis and, based on the testimony of a

3

vocational expert ("VE"), determined that Plaintiff was able to perform his past relevant work as a truck driver. *Id.* at 15. Based on these findings, the ALJ determined that Plaintiff was not under a disability at any time through the date of his decision. *Id.* at 15-16. These determinations were supported by substantial evidence, a summary of which now follows.

On October 6, 1999, Dr. George Jacobs performed a lumbar decompression and laminectomy surgery of the L4-L5 vertebra of Plaintiff's low back. *Id.* at 162, 197-197. Dr. Jacobs stated on January 4, 2000 that Plaintiff was experiencing spasms and was complaining of pain. *Id.* at 169. Plaintiff continued to experience spasms on January 19 and March 8, 2000. *Id.* at 172-173. However, on May 17, 2000 Dr. Jacobs stated that Plaintiff was "getting better" and that conservative treatment would be sufficient to treat Plaintiff's symptoms. *Id.* at 174. Specifically, Plaintiff's spasms were less frequent. *Id.* Plaintiff was instructed to undergo physical therapy. *Id.* at 174. On July 20, 2000, Dr. Jacobs observed that Plaintiff was "doing much better on therapy", although Plaintiff now complained of inter-scapula pain. *Id.* at 175. X-rays revealed that Plaintiff's spine was normally aligned other than a slight reversal in the normal cervical lordosis. *Id.* at 176. No fractures or other gross abnormalities were observed. *Id.* Some calcification was noted in the posterior soft tissues of the neck at the level of C5 and C6. *Id.* Dr. Jacobs stated on October 4, 2000 that Plaintiff's low back pain was "better" and his incision was well healed. *Id.* at 177. Plaintiff still experienced neck and arm pain. *Id.* On January 24, 2001, Dr. Jacobs opined that the refusal of Plaintiff's insurance company "to allow him to have therapy is slowing down his progress and may interfere with his eventual result." *Id.* at 178. Although Plaintiff complained of numbness in his left foot on May 9, 2001, Dr. Jacobs declined to investigate this because the condition "goes away by itself". *Id.* at 179. Likewise, Dr. Jacobs indicated that Plaintiff did not require pain medication for this condition. *Id.* Finally,

4

on July 17, 2001 Dr. Jacobs stated that Plaintiff was improving despite some radicular problems in the left thigh. *Id.* at 180. During his treatment of Plaintiff, Dr. Jacobs did not diagnose Plaintiff with obesity. *Id.* at 161-181.

A physical examination performed at Hackensack University Medical Center on January 2, 2002 showed that Plaintiff's extremities were normal, without evidence of clubbing, cyanosis, or edema; and that Plaintiff had normal cranial nerve function, a normal gait and station, normal coordination, normal motor strength, and normal reflexes. *Id.* at 186. Although the examining physician noted that Plaintiff had a history of back surgery, the physician's diagnostic impression did not indicate current complaints of back pain. *Id.* at 186-87. Additionally, although Plaintiff weighed 213 pounds, the physician did not diagnose Plaintiff as overweight or obese. *Id.* at 186-87.

Plaintiff was examined by Dr. E.C. Land on April 29, 2003. *Id.* at 200-210. According to Plaintiff, surgery had improved his back pain. *Id.* at 201. However, Plaintiff stated that he still experienced intermittent lower back pain, which was exacerbated by household activities. *Id.* Over-the-counter pain relievers and hot pads provided relief for this pain. *Id.* He had a full range of motion in his shoulders, elbows, wrists, finger joints and cervical spine. *Id.* at 202. Dr. Land observed that Plaintiff's muscle strength was 5/5 at the grips, deltoids, dorsiflexors of the legs and quads. *Id.* There was no muscle atrophy in the upper or lower extremities, and straight leg raising was negative on both legs. *Id.* In addition, Plaintiff could pick up a flat object from a level surface with both hands without difficulty. *Id.* Although Plaintiff had a limp favoring the left leg, he could still tandem walk without losing balance. *Id.* Likewise, Plaintiff was capable of squatting. *Id.* X-rays revealed pronounced disc space narrowing at L4-L5 and anterior osteophytosis. *Id.* at 204. Ultimately, Plaintiff was diagnosed with: 1) history of traumatic

lumbar radiculopathy – status post lumbar laminectomy; and 2) mild hypertension. *Id.* Dr. Land did not diagnose Plaintiff with obesity. *Id.* at 202.

Dr. James R. Frazier examined Plaintiff on June 19, 2003. *Id.* at 211-213. During this examination, Plaintiff had no gait or postural difficulties, although he sat straight and complained of back pain. *Id.* at 211. Plaintiff indicated that he performed daily exercises and also went for walks. *Id.* at 212. However, he also stated that he had no hobbies "secondary to back pain" and that he did no household chores. *Id.* It was determined that Plaintiff was functioning within the range of borderline intellectual skills. *Id.* at 213.

From August 29, 2003 until March 7, 2008, Plaintiff received treatment from ECU Physicians. *Id.* at 214-257. On August 29, 2003, Plaintiff was diagnosed with: 1) "chronic, disabling back pain from what appears to be spinal disc disease and fusion"; 2) hypertension; and 3) hypercholesterolemia. *Id.* at 257. Dr. Thomas J. Ellis examined Plaintiff on November 20, 2003. *Id.* at 251. Plaintiff was assessed with hypertension, hypercholesterolemia, and reactive airway disease. *Id.* His back pain was not specifically mentioned during this examination. *Id.* On January 5, 2004, Dr. Ellis stated that Plaintiff "still has significant problems with regards to degenerative disc disease . . ." *Id.* at 244. During a March 8, 2004 examination, Plaintiff was described as "doing well." *Id.* at 241. Dr. Ellis again stated that Plaintiff was "doing well" on June 10, 2004. *Id.* at 238. Specifically, Plaintiff's blood pressure was much improved and he was tolerating his cholesterol medications. *Id.* Plaintiff was diagnosed with hypertension and hypercholesterolemia, while his back pain was not specifically discussed. *Id.* at 238. On August 24, 2004, Dr. Ellis stated that Plaintiff was "unable to fully extend himself to the floor, secondary to disc disease." *Id.* at 234. No significant changes were noted with regard to Plaintiff's strength, however. *Id.* After examining Plaintiff on April 19, 2005, Dr. Ellis opined "I don't

6

ever see him returning to work, because of the risk of reinjury, and because of his inability to do any repetitive lifting." *Id.* at 229. Upon examination, however, Plaintiff was described as having good reflexes and strength. *Id.* Dr. Ellis stated on May 21, 2007 that Plaintiff "continues to be treated for ongoing issues related to lumbar disc disease after having fusion surgery." *Id.* at 215. He also indicated that Plaintiff's "[c]hronic problems include pain and hypertension." *Id.* Furthermore, Dr. Ellis added that "these problems are longterm and permanent without anticipation of improvement." *Id.* However, in his May 21, 2007 letter, Dr. Ellis did not specifically describe any of Plaintiff's functional limitations resulting from these impairments. *Id.* On June 9, 2007, Plaintiff was described as generally asymptomatic with regard to his hypertension hypercholesterolemia. *Id.* at 216. In addition, it was noted that Plaintiff continued to have problems related to chronic back pain. *Id.* Plaintiff was not specifically diagnosed with obesity during this period.

Dr. Gonzalo Pimentel examined Plaintiff on February 18, 2004. *Id.* at 317-319. During this examination, Plaintiff had no complaints and denied any pain. *Id.* at 317. In fact, Plaintiff told Dr. Pimentel that "he is on disability because of lower back surgery even though he has no pain and is taking no analgesics." *Id.* After this examination, Plaintiff was diagnosed with: 1) tobacco abuse; 2) obesity; 3) hypertension; 4) hyperlipidemia; and 5) history of lower back surgery. *Id.* at 319. On August 27, 2004, Dr. Pimentel noted that Plaintiff's blood pressure was normal and that he had lost some weight. *Id.* at 315. Specifically, Plaintiff's diagnosis of obesity was altered to "overweight . . . [t]his has improved." *Id.* Again, there was no specific mention of Plaintiff's back pain during this examination. *Id.* at 315-316. Likewise, on March 23, 2005: 1) Plaintiff's hypertension was well controlled; 2) Dr. Pimentel described Plaintiff as "overweight" rather than obese; and 3) no back pain was mentioned. *Id.* at 313-314. Plaintiff

7

stated on August 24, 2005 that he has "occasional low back pain", although he was not having any significant problems recently. *Id.* at 310. During this examination, Plaintiff was not diagnosed as being either overweight or obese. *Id.* at 310-312. Dr. Stephen Lynch stated on January 3, 2006 that Plaintiff was "quite physically active." *Id.* at 307. Although Plaintiff complained of pain in his right lateral calf, he otherwise voiced no other concerns. *Id.* His blood pressure was elevated, although "not terribly so." *Id.* This elevated blood pressure was attributed to the fact that Plaintiff incorrectly believed he had been instructed to stop taking his blood pressure medication. *Id.* On July 10, 2007, Plaintiff had no complaints during his annual physical examination. *Id.* at 302. Plaintiff complained of back and neck pain on September 21, 2007. *Id.* at 297. X-rays revealed: 1) degenerative disc changes at C5-C6 with some anterior and posterior osteophytes; and 2) degenerative changes at the L4-L5 disc space with some spondylosis. *Id.* at 296. No acute abnormalities were observed, and all other vertebrae and disc spaces appeared normal. *Id.* Dr. Lynch stated on November 2, 2007 that Plaintiff had no significant back pain and "no neuropathic concerns at all." *Id.* at 21. Plaintiff's blood pressure was elevated, although he had no symptoms. *Id.*

On January 29, 2007, Plaintiff's RFC was assessed. *Id.* at 329-336. It was determined that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk (with normal breaks) for a total of about six hours in an eight hour workday; 4) sit (with normal breaks) for a total of about six hours in an eight hour workday; and 5) push and/or pull with no limitations other than those already noted for lifting and/or carrying. *Id.* at 330. In addition, Plaintiff was deemed capable of frequently climbing, balancing, kneeling and crawling. *Id.* at 331. However, Plaintiff could only occasionally stoop or crouch. *Id.* No manipulative, visual, communicative, or environmental limitations were noted. *Id.* at 332-333.

This RFC assessment was affirmed by Dr. Charles Burkhart on March 19, 2007. *Id.* at 354.

Dr. Susan Killenberg assessed Plaintiff's mental RFC on January 30, 2007. *Id.* at 337-350. She determined that Plaintiff had no severe mental impairments. *Id.* at 337, 349. However, Dr. Killenberg did note that Plaintiff did have "borderline – low . . . [average] IQ." *Id.* at 338. Ultimately, Dr. Killenberg determined that Plaintiff had no restrictions in his activities of daily living or difficulties in maintaining social functioning. *Id.* at 347. Likewise, no episodes of decompensation were reported. *Id.* However, Dr. Killenberg opined that Plaintiff had mild difficulty in maintaining concentration, persistence or pace. *Id.* This RFC assessment was affirmed by Dr. Robert Johnson on March 20, 2007. *Id.* at 355.

Plaintiff complained of lower back pain on May 20, 2008. *Id.* at 364. The pain was described as "off and on" and Plaintiff was pain free at the time of his examination. *Id.* A June 20, 2008 MRI of Plaintiff's lumbar spine revealed congenital narrowing of the lumbar spinal canal. *Id.* at 357. On July 21, 2008, Plaintiff stated that his lower back pain was well controlled with salsalate. *Id.* at 361. A treatment note dated January 21, 2009 indicates that Plaintiff was evaluated by neurosurgery on December 15, 2008. *Id.* at 399. However, Plaintiff did not remember much about the examination, and the treatment records were lost. *Id.* During an April 21, 2009 examination, Plaintiff complained of numbness and tingling in his left leg. *Id.* at 394. However, these symptoms were described as "occasional" and "tolerable." *Id.* Plaintiff rated his pain as a 0 out of 10 during this examination. *Id.* at 395. Likewise, on May 1, 2009, Plaintiff rated his pain of 0 out of 10. *Id.* at 389.

On June 27, 2009, Plaintiff was examined by Dr. Carey Miklavcic. *Id.* at 401-410. Ultimately, Dr. Miklavcic opined that "[a]lthough the claimant alleges back pain with radiation limiting his ability to sit, stand, walk, bend, the objective evidence does not support the claimant's

allegations. *Id.* at 403. Specifically, Dr. Miklavcic determined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently. *Id.*

During the hearing in this matter, Plaintiff testified that he "never recovered from the back surgery." *Id.* at 26. Plaintiff also stated that his "legs . . . [go] numb a lot" and that he has "pain through . . . [his] legs." *Id.* In addition, Plaintiff asserted that he could only walk about five minutes and stand for 30 minutes before his legs "would give out on . . . [him]." *Id.* at 29-30. According to Plaintiff, he is only capable of lifting five pounds. *Id.* at 30. However, Plaintiff also indicated that he could climb, bend over, stoop and squat. *Id.* at 31. Later, Plaintiff added that he could not bend over without experiencing pain. *Id.* at 36. Likewise, he stated that he could grip with both hands and was also capable of picking up small items. *Id.* at 31-32. Nonetheless, Plaintiff also testified that he was incapable of completing most household chores. *Id.* at 32. Furthermore, Plaintiff testified that he was only pain free when he was lying down. *Id.* at 36-37.

Finally, the VE in this matter testified that a person with Plaintiff's RFC would be able to perform Plaintiff's past relevant work as a truck driver. *Id.* at 39-41.

Based on this record, the ALJ made the following specific findings:

> The claimant's lower extremity pain has been considered under the requirements of Listing 1.02, but has not resulted in a severe inability to ambulate effectively or carry out routine activities of daily living. Additionally the claimant's diagnosed hypertension has been shown to respond well to medication and has not required more than conservative treatment . . .
>
>  . . . After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform jobs at the medium to light exertional levels as defined in 20 CFR 404.1567(c). In a function-by-function assessment, the claimant can sit/stand/walk for 6 hours out of an 8 hour workday; and can lift/carry 50 pounds occasionally and 25 pounds frequently . . .

10

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment . . .
>
> After reviewing the evidentiary record in its entirety, the Administrative Law Judge assigns determinative weight to the findings and opinion expressed by Carey Miklavcic, D.O., who evaluated the claimant on June 27, 2009 . . .

(Tr. 12-14).

Plaintiff contends that the ALJ erred by not expressly discussing Plaintiff's obesity. This argument is without merit. First, the record shows that, although Plaintiff was occasionally diagnosed as "overweight", he was rarely diagnosed as "obese". This case is therefore distinguishable from James v. Astrue, No. 7:09-CV-15-FL, 2009 WL 4827417 (E.D.N.C. Dec. 11, 2009), cited by Plaintiff. In James, the court noted that the plaintiff was "consistently assessed with obesity throughout the medical record." Id. at *3. Moreover, the evidence shows that Plaintiff's weight did not impose disabling functional limitations, either by itself or in combination with Plaintiff's other impairments. The ALJ cited numerous examination findings showing that, despite Plaintiff's weight, Plaintiff had normal range of motion and full motor strength of his back, arms, and legs. (Tr. 12-14, 201-203, 260-62, 363-66, 401-403.)

Plaintiff's remaining assignment of error relies primarily on the contention that the ALJ improperly weighed the evidence. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that

11

of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, his claims are without merit.

In short, the Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. For this reason, Plaintiff's motion should be denied.

**Conclusion**

For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-27) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-33) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Monday, June 06, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE